**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TANYA LACKEY, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 11-1087** |
| **SDT WASTE AND DEBRIS SERVICES, ET AL.** | **SECTION: "H" (4)** |

<u>**REPORT AND RECOMMENDATION**</u>

This motion was referred to the undersigned United States Magistrate Judge for the submission of Proposed Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.[1]  Specifically before the Court is Defendants, SDT Waste & Debris Services, LLC, et al.'s, ("SDT") **Defendants' Rule 37(b) and 41(b) Motion to Dismiss and Request for Attorney's Fees (R. Doc. 122)**, seeking an Order from this Court granting a dismissal of all potential claims by several of the putative class members in this case, as well as for attorney's fees. Plaintiffs, Tanya Lackey, et al., ("Plaintiffs")[2] oppose the motion.  (R. Doc. 125).  SDT has filed a Reply (R. Doc. 131) and a Supplemental Memorandum (R. Doc. 138).  Lackey has filed a Supplemental Affidavit (R. Doc. 134) and a Sur-Reply (R. Doc. 147).  The Motion was heard by oral argument on May 15, 2013.

---

[1]Rec. Doc. No. 123.

[2]Plaintiffs will be referred to herein alternatively as "Plaintiffs," "Class Plaintiffs," or "Lackey."

I.      **Background**

This is a class action claim, where plaintiffs are several specific types of workers of Defendant, SDT.  The Complaint alleges, *inter alia*, that SDT forced specific classes of employees to work during their 30-minute lunch breaks or risk termination, in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") (R. Doc. 1, p. 2).  Under the FLSA and the Louisiana Whistleblower Act, La. Rev. Stat. Ann. § 23:967, plaintiffs allege that they are entitled to overtime benefits which SDT never paid.  *Id.* at 5-6.  Plaintiffs further allege that SDT engaged in unlawful retaliation by terminating the employment of those employees who complained about SDT's practices.  *Id.* at 6-8.

The Plaintiff class originally consisted of 23 individuals, and on October 1, 2011, plaintiffs moved to certify the class.  (R. Doc. 34).  This motion was granted in part and deferred in part on December 19, 2011.  (R .Doc. 59).[3]  In support of the instant motion, SDT argues that after a period of 75 days following this Order, "372 individuals signed Consent Forms thereby becoming parties to this litigation."  (R. Doc. 122-1, p. 2).  This brought the total size of the class to 395.  Thereafter, on July 6, 2012, SDT served Rule 33 Interrogatories and Rule 34 Requests for Production of Documents on the plaintiffs by hand-delivering the same to plaintiffs' counsel.  *Id.*; *see* (R. Doc. 91-2).  Under Rules 33 and 34, plaintiffs had thirty days, or until August 6, 2012, to respond.

On December 11, 2012, SDT moved to compel responses to its outstanding discovery requests, and the undersigned issued an Order, permitting Lackey 14 days as of January 9, 2013 to secure discovery responses from all missing potential claimants.  (R. Doc. 106).  After this deadline expired, on February 25, 2013, the presiding U.S. District Judge then held a status conference.  (R.

---

[3]The class of persons conditionally certified included "[a]ll individuals who worked or are working for . . . [SDT] as hoppers, mechanics, dispatchers and/or drivers from May 6, 2008 until the date of the resolution of the present action, and who are or were eligible for overtime pursuant to the FLSA, 29 U.S.C. § 207 and who had 30 minutes deducted from each day's work hours but were not allowed to stop working for a 30 minute meal period, such that the deducted 30 minute period primarily benefitted SDT . . . . (R. Doc. 59, p. 2).

Doc. 115).  At the conclusion of the status conference an Order was issued, stating that "all Plaintiffs who have not done so already shall submit *properly verified responses* to the discovery propounded by Defendants no later than fourteen (14) days from Tuesday, February 26, 2013," i.e., by March 12, 2013.  (R. Doc. 115) (emphasis added).  The Order stated that "all Plaintiffs who fail to submit *properly verified responses* in accordance with this Order shall be dismissed from the litigation." *Id.* (emphasis added).

On April 9, 2013, Lackey filed into court a stipulation stating that as of that date, 176 class plaintiffs had failed to provide properly verified responses in compliance with the presiding U.S. District Judge's Order.  (R. Doc. 119).[4]  Thereafter, the presiding U.S. District Judge ordered that

---

[4]As listed in Lackey's Stipulation, these parties are: 1 Chedrick Alexander (#223), 2 David Alexander (5/26/11), 3 Terry Booker (#83) incorrectly identified as "Terry Baker"; 4 Jarreth Banks (#357), 5 Karl J. Bazile (#217), 6 Raymond C. Beckett (#207), 7 Jared E. Bennett (#295), 8 James Bolds (5/17/11), 9 Jeanette Bowley (#122), 10 Walter Bradix, III (#90), 11 Emmanuel S. Branch (#119), 12 Emile L. Breaux (#180), 13 Cornell A. Bridgett (#286), 14 Tiffani Broadbridge (#185), 15 Michael Brodmyer (#142), 16 Darnell Brown (12/1/11), 17 Steven Brumfield (#79), 18 Narekia Butler (#242), 19 Eddie Byrd, III (#346), 20 Dominique Campbell (#162), 21 Mark Carlisle, Jr. (#105), 22 Julius J. Carter (#197), 23 Michael C. Carter (#351), 24 Steven Cayou (#318), 25 Evangelie Cerf (#305), 26 Shomon Chapman (#274), 27 Christopher Chappell (#203), 28 Brandon Charles (#8), 29 Louis D. Charleston (#345), 30 Jimmie Clark (#101), 31 Eric J. Cleary (#309), 32 Alvin J. Cloy (#288), 33 Jarrett R. Coleman (#358), 34 Zan Collier (#148), 35 Cefer Collins (#17), 36 Denerian Collins (#367), 37 Louis Cornibe, IV (#186), 38 Charles E. Crenshaw (#95), 39 Anthony Cucinella, Jr. (#349), 40 Jamal Cyres (#40), 41 Sandra Dauzat (#215), 42 Earl J. Davis (#34), 43 Vanjo Davis, Sr. (#341), 44 Joshua DeFranza (#126), 45 Charles Dewitt (#213), 46 Clifton Drummer, III (#139), 47 Quentin Edwards (#255), 48 Calderon Luis F. Espinoza (#60), 49 Charles E. Evans (#19), 50 Derek J. Evans (#31), 51 Richard E. Evans (#194), 52 Troy A. Fields (#319), 53 Edward L. Fisher (#276), 54 Devin D. Forcell (#198), 55 Victor G. Frisco, III (#262), 56 Melvin Gaines, Jr. (#63), 57 Victor Gaines (5/13/11), 58 Brandon D. Galman (#9), 59 Frank Gardner, III (#120), 60 Glennard Garnett (#38), 61 Terrell Garrett, Sr. (#226), 62 Cornelius Garrison (#116), 63 Earl Ray Gordon (#300), 64 Brandon Grant (#141), 65 Shaddrix D. Green (#150), 66 Brandon M. Guevara (#339), 67 Jose Guttierez (#124), 68 Terry A. Hall (#284), 69 Theo M. Hampton (#272), 70 Mark Harvey (#62), 71 Eric L. Hawthorne (#147), 72 Darnell Hayes (#28), 73 Kriston Hoffman (#240), 74 Stephen Howard (#77), 75 Justin Hutchinson (#297), 76 Michael Hymel, Sr. (#330), 77 Jermain Jackson (#165), 78 Marcus L. Jackson (#321), 79 Johnny Jenkins (#218), 80 Brandon J. Johnson (#10), 81 Byron K. Johnson (#307), 82 Derrick L. Johnson (#230), 83 Kevin F. Johnson (#315), 84 Dwayne P. Jones, Sr. (#33), 85 John W. Jones (#268), 86 Sherman E. Jones (#280), 87 Ronnie Junior (#235), 88 Gerald Keaton, Jr. (#202), 89 Charles King (#158), 90 Jesse Koehl (#176), 91 Matthew G. Labee (#106), 92 Charles D. Legard (#166), 93 LeAndes Lester (#239), 94 Keyshon Lewis (#277), 95 Sherman Lewis (#181), 96 Tyrone Lloyd, Sr. (#304), 97 Lawrence F. Lohr, III (#289), 98 Korey L. Louis (#56), 99 Ashleigh M. Lucas (#322), 100 Danny Magee (#146), 101 Willie J. Matthews, II (#167), 102 Jerrime C. McAfee (#153), 103 Gordon McFarland, Jr. (#338), 104 Rupert E. McField (#211), 105 Jeremy McKnight (#251), 106 Gregory Melson, Sr. (#39), 107 Lyddell Meyers (#236), 108 Jackson R. Miller (#299), 109 Joshua J. Montgomery (#369), 110 Bobby Moore (#93), 111 Katherine C. Morris (#324), 112 Keshon W. Mosely (#233), 113 Jerome Myers (#355), 114 Edgard A. Ochoa (#264), 115 Robert L. Odoms, Jr. (#111), 116 Marquise D. Perkins (#291), 117 Salvador H. Peters (#75), 118 Darryl W. Petty, Jr. (#175), 119 John W. Ponds, Jr. (#222), 120 Eddie W. Pounds (#164), 121 Donald J. Rabalais, Jr. (#312), 122 Maxzile Rachal, Jr. (10/18/11), 123 Diego Ramos (#314), 124 Curtis J. Randall (5/13/11), 125 Darnell D. Randall (#350), 126 Bjorn P. Rattley, Sr. (#370), 127 Lisa C. Reily (#152), 128

3

"the parties listed in the Stipulation (R. Doc. 119, Ex. A) are hereby **DISMISSED**."  (R. Doc. 120, p. 1).  According to SDT, after dismissal 219 plaintiffs remain.  (R. Doc. 122-1, p. 2).

Thereafter, on April 23, 2013, SDT filed the instant motion to dismiss, in which it argues that 180 of the remaining 219 class plaintiffs should be dismissed under Federal Rule of Civil Procedure ("Rule") 37(b) and Rule 41(b) for failure to comply with the presiding District Judge's Order to submit their discovery responses.  (R. Doc. 122).[5]  According to SDT, these additional dismissals are warranted where (1) a class plaintiff's response was not served by March 12, 2013; (2) the Verification attached to a class plaintiff's response was not dated; (3) the signatures on a class plaintiff's Verification appeared to be forged; and (4) where a class plaintiff failed to review their discovery responses when signing his or her Verification.  *Id.* at 2-3.  SDT also moves for an award of reasonable attorney's fees.  *See id.*

Lackey has opposed the motion, arguing in general that because the Fifth Circuit favors determination of claims on their merits, and because a Rule 37(b) dismissal is a drastic sanction, the Court's interpretation of the March 12, 2013 deadline should be construed in their favor whenever

---

Arthur J. Richardson (#4), 129 Ronald Roberts, Jr. (#170), 130 Elmer N. Rogers (#118), 131 James A. Rollins (#228), 132 Ronald J. Roth (#192), 133 Quvadias R. Ruffin (#248), 134 Bernard Sampson (#6), 135 Michael Sampson (#108), 136 Michael Sanders (#201), 137 Robert Savell (#112), 138 Kelvin A. Scott (#250), 139 Ferdinand Shezbie (#354), 140 David L. Shumaker (#30), 141 Brian J. Simmons, Jr. (#206), 142 Joroid Simms (#325), 143 Arthur D. Smith, Jr. (#273), 144 Edmond J. Smith (#343), 145 Kerry A. Smith (#55), 146 Carl Spadoni (#16), 147 James N. Spears (#256), 148 Patrick R. Spears (#177), 149 Vellareatha F. Steen (#210), 150 Jarvis Tenner (#43), 151 Eric Theard (#364), 152 Adonius Thomas (#270), 153 Joseph D. Thomas, Sr. (#333), 154 Troy E. Thomas (#265), 155 Joseph A. Thompson (#102), 156 Lester Thompson, Jr. (#168), 157 Marlon V. Thompson (#348), 158 David Toussaint (#328), 159 Chester K. Trim (#352), 160 Kevin Van Buren (#347), 161 Sylvester A. Venible (#179), 162 Jared E. Vortisch (#313), 163 Ira C. Waldrop (#189), 164 Robert E. Walker (#292), 165 Timothy C. Washington (#243), 166 Jammie M. Webster (#42), 167 Rashaud L. West, Sr. (#159), 168 Byron A. White (#14), 169 Charles E. Williams (#18), 170 Dave Williams (#371), 171 Johnathan T. Williams (#51), 172 Patrick R. Williams (#67), 173 Reginald Wilson (#132), 174 Tonny L. Woolridge (#327), 175 Jue Michael Young (#238), 176 Pernell Young, Sr. (#144).  In this list, the parenthetical number is "based on [the] court record filing," and the parenthetical date is based on the "[d]ate of plaintiff's court record intervention." (R. Doc. 119-1, p. 3).  The number appearing after a class plaintiff's name is that plaintiff's claim number; a date appears for those class plaintiffs who joined the action prior to the opt-in period, indicating the date that plaintiff joined this action.

[5]Notably, SDT's argument focuses exclusively on Rule 37(b), and references Rule 41(b) only to demonstrate that it can operated in conjunction with Rule 37(b) to act as an adjudication on the merits.  (R .Doc. 122-1, p. 3).

possible.  (R. Doc.  125, p. 3).   Lackey also argues that there has been no "disobedience" of a discovery order in this case - as evidenced by the fact that on April 9, 2013, Lackey filed a stipulation dismissing 176 plaintiffs who had failed to submit their discovery responses in accordance with the Court's Order.  *See id.*

## II.    <u>Standard of Review</u>

Rule 37(b) provides that "[i]f a party . . . fails to obey a discovery order to provide or permit discovery . . . the court where the action is pending may issue further just orders."  *Id.*  Sanctions for failure include (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; or (vi) rendering a default judgment against the disobedient party.  Rule 37(b)(2).  "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by that failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  *Id.* at 37(b)(2)(C); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980).

Under Rule 37(b), dismissal with prejudice is a sanction of last resort, which is only to be applied in extreme circumstances where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions.  *Batson v. Neal Spelce Association, Inc.*, 765 F.2d 511, 514-15 (5th Cir. 1985) (citation omitted); *Tuck Treads, Inc. v. Armstrong Rubber Co.*, 818 F.2d 427, 430 (5th Cir. 1987); *Bluitt v. Arco Chemical Co.*, 777 F.2d 188, 190-91 (5th Cir. 1985).  "The imposition of a sanction without prior warning is to be avoided."  *Mendoza v. Lynaugh*, 989 F.2d

191, 195 (5th Cir. 1993).  Where, upon consideration of the "full record," the district court has been "extremely patient in its efforts to allow . . . ample time to comply with its discovery orders," a Rule 37(b) dismissal may be warranted.  *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976).

Thus, Rule 37(b) dismissals with prejudice are reserved for the most egregious cases, where the requisite factors of clear delay and ineffective lesser sanctions are bolstered by the presence of at least one of several aggravating factors.  *Clofer v. Perego*, 106 F.3d 678, 679 (5th Cir. 1997).  Such factors are delay resulting from (1) intentional conduct; (2) caused by the plaintiff personally; and (3) causing prejudice to the defendant.  *Id.*  Dismissal may also be appropriate if a client's attorney is largely to blame.  *See Dorsey v. Scott Wetzel Services, Inc.*, 84 F.3d 170, 171-72 (5th Cir. 1996); *Woodson v. Surgitek*, 57 F.3d 1406, 1418 (5th Cir. 1995).  A sanction of dismissal may not be based upon mere negligence, "regardless of how careless, inconsiderate, or understandably exasperating."  *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77-78 (5th Cir. 2011) (quotations omitted).

Additionally, Rule 41(b) specifically provides that a court may, in its discretion, dismiss a plaintiff's claim to prosecute or for failure to comply with the Federal Rules of Civil Procedure or any order of the court.  *Id.*  A Rule 41(b) dismissal is considered an adjudication on the merits.  *Id.*  In determining whether to dismiss a claim, courts have traditionally considered the extent to which the plaintiff, rather than counsel, has been responsible for any delay or failure to comply with a rule or order.  *See, e.g.*, *Markwell v. County of Bexar, Texas*, 878 F.2d 899, 902 (5th Cir. 1989); *Price v. McGlatery*, 792 F.2d 472, 474-75 (5th Cir. 1986); *Silas v. Sears, Roebuck & Co.*, 586 F.2d 382, 385 (5th Cir. 1978); *Ramsay v. Bailey*, 531 F.2d 706, 708-09 (5th Cir. 1976).

III.   **Analysis**

   A.      **The District Judge's Order; Scope of Referral**

In the instant motion, SDT seeks to dismiss 180 of the remaining plaintiffs from this suit for their failure to complete their discovery obligations by the March 12, 2013 deadline.  The Court notes that although styled as a Rule 37(b) Motion, the presiding U.S. District Judge's Order was unequivocal: all plaintiffs who failed to "submit" "properly verified responses" to SDT's discovery requests by March 12, 2013 were to be dismissed.  All of the parties' arguments must be viewed through this lens, which disallows the imposition of an intermediate sanction.  The only issues for the Court within the scope of this referral are to determine (1) when discovery responses should be deemed to be timely submitted under the Order, and (2) what types of responses should be deemed "properly verified" under the Order.

   1.      **Whether Verifications Were "Submitted"**

The first issue is whether the responses were "submitted."  In support of its Motion, SDT argues for a strict construction of "submit" to mean "serve on SDT" by March 12, 2013.  (R. Doc. 122-1, pp. 3-4).  In opposition, Lackey contends that "submit" should mean that plaintiffs could comply with the Court's Order by "submitting" their discovery requests to Lackey's counsel, which would then be forwarded on to SDT.  (R. Doc. 125, pp. 2-3).

The Court finds because the outcome of finding contravention of the District Judge's Order will result in dismissal, the most severe of the Rule 37(b) sanctions, the Court must interpret "submit" broadly, and dismiss a plaintiff class member only where it is clear that the plaintiffs have completely failed to transmit their Verifications in some form on or before March 12, 2013.  As such, the Court finds that for purposes of this Report and Recommendation, plaintiffs could comply with the Court's Order so long as they "submitted" their discovery responses to Lackey's counsel

on or before the March 12, 2013 deadline.

### 2.      Whether Verifications Were "Properly Verified"

The next issue is whether the responses were "properly verified." The parties do not specifically furnish arguments in support or opposition of a particular reading.

Under Rule 33, "interrogatories must be answered by the party to whom they are directed." *Id.* at 33(b)(1)(A). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." *Id.* at 33(b)(3). Further, Rule 33(b)(5) requires that "[t]he person who makes the answers must sign them." *Id.* at 33(b)(5).[6] Courts have construed the Rule 33 signing requirement rigidly. *Entergy Louisiana, Inc. v. National Union Fire Insurance Co.*, No. 98-219, 1999 WL 239511, at *2 (E.D. La. Apr. 21, 1999) (finding that under Rule 33(b)(5), the party, and not the party's attorney, must sign Interrogatories); *Swank v. Scottsdale Insurance Co.*, 2011 WL 1044625, at *3 (W.D. La. Mar. 21, 2011) (same).

However, this rigid *signing* requirement does not extend to response characteristics other than signing. *See Lyle v. Dedeaux*, 39 F.3d 320, 1994 WL 612506, at *3 n.10 (5th Cir. Oct. 24, 1994) (finding that Rule 33 requires only that the Interrogatories be *signed* by the person to whom they are directed, although they may be *dated* by someone else). Further, other courts have found that a signing defect can be remedied where a party verifies the answers and signs the Verification. *See, e.g.*, *Stevens v. Omega Protein, Inc.*, No. 00-3326, 2002 WL 1022507, at *3 (E.D. La. May 16, 2002); *Adams v. Turkey*, 2012 WL 253313, at *2 (S.D. Tex. Jan. 25, 2012).

Here, the parties agree that SDT's Interrogatories were not signed by any of the class plaintiffs. Instead, the plaintiffs substituted "unsworn declarations" pursuant to 28 U.S.C. § 1746.

---

[6]The Court also notes that Rule 34 does not contain a signature requirement, and SDT does not argue that plaintiffs' failure to provide signatures in connection with Rule 34 productions warrants dismissal of any plaintiffs for failure to comply with the Court's Order.

Other courts have found that "Rule 33 does not prescribe any particular form of Verification. Either a declaration pursuant to Section 1746 or a statement under oath is sufficient." *Zanowic v. Reno*, 2000 WL 1376251, at *5 (S.D.N.Y. Sept. 25, 2000). Section 1746 allows for submission of an unsworn declaration, and reads:

> Wherever, under any law of the United States or under any rule . . . any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
> . . . .
>> (2) If executed within the United States . . . : "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>>
>> (Signature)."

28 U.S.C. § 1746. Other courts have found that unsworn declarations pursuant to 28 U.S.C. § 1746 are a permissible substitute for providing signed Interrogatory responses in class action litigation. *See In re World Trade Center Lower Manhattan Disaster Site Litigation*, 2012 WL 5199383, at *1 (S.D.N.Y. Oct. 22, 2012) (allowing for use of unsworn declarations for interrogatory responses in class action litigation); *cf. Ayuso-Figueroa v. Rivera-Gonzalez*, 456 F. Supp. 2d 309, 315 (D.P.R. 2005) (finding that unsworn answers to Interrogatories could be used on summary judgment). However, where the unsworn declaration is not attached to the Interrogatories, or fails to explicitly refer to the same, it is "without meaning for it cannot be effectively challenged as any specific response. Like a blank check, the signature can mean anything or nothing." *World Trade Center*, 2012 WL 5199383, at *3.[7]

---

[7]Accordingly, other courts have remained skeptical of Verifications which allow for ambiguity as to what, in particular, is sworn to. *See International Insurance Co. v. Caja Nacional De Ahorro y Seguro*, 293 F.3d 392, 398-99 (7th Cir. 2002) (finding that declaration referred to document executed in 1998, while the "relevant time" for the lawsuit in question was 2000); *Cobell v. Norton*, 310 F. Supp. 2d 77, 85 (D.D.C. 2004) (finding that federal department failed to adequately certify the security of its data storage systems where it stated that statements were made on "knowledge,

Therefore, for purposes of this Report and Recommendation, plaintiffs "properly verified" their interrogatory responses in compliance with the Court's Order where an attempt has been made to (1) sign under penalty of perjury, and which (2) sufficiently references the discovery at issue.

**B.   Merits of Motion**

    **1.   Untimely Discovery Responses[8]**

        **a.   Good Faith Attempt to Submit: Edelia Garza (#303), Terrill Hills, Jr., (#81), Stephen Mercadel (#78), and Allen Pearson (#145)**

The first issue is whether the submission of four class plaintiffs - Edelia Garza (#303), Terrill Hills, Jr., (#81), Stephen Mercadel (#78), and Allen Pearson (#145) - should be deemed timely notwithstanding the fact that their discovery was received by SDT after March 12, 2013.

SDT argues that even though four of the plaintiffs in question submitted their responses before March 12, 2013, these responses were not forwarded to SDT before March 12, 2013.  (R. Doc. 131, pp. 2-3).  SDT argues that unless the presiding U.S. District Judge's Order is read to mandate "service" by March 12, 2013, no meaningful limitation can be placed on when SDT was to be provided with copies of plaintiffs' Interrogatories.  *Id.*  Indeed, SDT contends that Plaintiffs' actions in both hand-delivering a diskette on March 12, as well as repeatedly forwarding emails when Verifications were received, indicate that they too believed that their answers would have to be "served" on SDT by March 12, 2013.  *Id.* at 3.  For these reasons, SDT argues that these plaintiffs should be dismissed.  *See id.*

---

information, and belief.").

    [8]Included in this category are Edelia Garza (#303), Terrill Hills, Jr., (#81), Stephen Mercadel (#78), Allen Pearson (#145), Deverren J. Allen (#263), Leroy Kyle Aultmon (#58), Corey R. Charles (#279), Larry Gordon (#104), John H. Holmes (#363), Arthur E. Jackson, III (#3), Daneille C. Jones (#237), Salvador E. Lauricella (#196), Andre T. Matthews (#308), DeRoy McNeal (11/3/11), and Wilbert Robinson (#138).

In opposition, Lackey contends that these four class plaintiffs made a "good faith" effort to respond to discovery prior to the March 12, 2013 deadline. (R. Doc. 125). Specifically, Edelia Garza (#303) faxed her responses to Lackey's counsel's office on March 12, 2013, at 4:45 p.m., but they were not discovered until the next day. (R. Doc. 125, p. 11). Additionally, Terrill Hills, Jr., (#81), and Stephen Mercadel (#78) mailed their responses, which "were received in the U.S. Mail on March 13, 2013." *Id.* at p. 11 & n.14. Allen Pearson (#145) also mailed his response, which was received on March 15, 2013. SDT does not specify whether "received" means "postmarked." *Id.*

As noted above, Rule 37(b) is a draconian remedy, which should be exercised sparingly. The Court finds that given the liberal definition of "submit" which it is appropriate to adopt in cases involving the potentially draconian measure of dismissal, these four class plaintiffs have timely "submitted" their responses by making a good faith effort to deliver them to their counsel on or before the March 12, 2013 deadline. Garza's submission was actually received on March 12, 2013, but was not forwarded on until the next day. Hillis, Jr., Mercadel, and Pearson's responses were all received by Lackey no later than March 15, 2013, three days after the deadline expired, and it is reasonable to conclude that they "submitted" their disclosures by March 12, 2013. Therefore, these class plaintiffs are not subject to dismissal as a result of their failure to *serve* SDT with properly verified responses on or before the March 12, 2013 deadline.

> **b.** **Failure to Submit: Deverren J. Allen (#263), Leroy Kyle Aultmon (#58); Corey R. Charles (#279), Larry Gordon (#104), John H. Holmes (#363), Arthur E. Jackson, III (#3), Daneille C. Jones (#237), Salvador E. Lauricella (#196), Andre T. Matthews (#308), DeRoy McNeal (11/3/11), and Wilbert Robinson (#138)**

SDT contends that for eleven additional plaintiffs, there is no evidence of any attempt to "submit" their Verifications to Lackey prior to the March 12, 2013 deadline. (R. Doc. 131, pp. 2-3). These plaintiffs are Deverren J. Allen (#263), Leroy Kyle Aultmon (#58); Corey R. Charles (#279);

Larry Gordon (#104); John H. Holmes (#363); Arthur E. Jackson, III (#3); Daneille C. Jones (#237); Salvador E. Lauricella (#196); Andre T. Matthews (#308); DeRoy McNeal (11/3/11); and Wilbert Robinson (#138).

In opposition, Lackey admits that these eleven plaintiffs all "submitted their discovery responses either in person or via facsimile after March 12, 2013, or were received in the U.S. mail after March 15, 2013, more than three days after the deadline." *Id.* at p. 11. Lackey argues that these plaintiffs, for whom no excuse for the late filing is given, should nonetheless be retained in the suit because "any prejudice to Defendants from the untimely submission . . . is certainly not substantial." *Id.*

Regardless of the degree of "prejudice" SDT has suffered, Lackey admits that none of the eleven responses were "submitted" by the March 12, 2013 deadline. Unlike the four Plaintiffs listed above, these eleven cannot be reasonably construed as having "misunderstood" the filing requirements; they simply missed them. There is no question that they violated the explicit mandate of the presiding U.S. District Judge's Order by so doing. As such, based on the judge's Order, these eleven class members should be dismissed.

## 2.    **Undated Verifications**[9]

In support of its motion, SDT argues the Verifications of five plaintiffs were undated. (R. Doc. 122-1, pp. 4-5). It argues that the Rules require that "responses to interrogatories be answered separately and fully in writing under oath and signed." (R. Doc. 122-1, p. 4). SDT contends that Section 1746 unsworn declarations are invalid where they are undated. *Id.* To that end, SDT argues that the Verifications of plaintiffs Chad Davis (#231); Kendrick McCoy (#205); DeRoy McNeal

---

[9]Included in this category are: Javares Tobias (#160), Delroy McNeal (11/2/11), Chad Davis (#231), Christopher Scogin (#21), and Kendrick McCoy (#205).

(11/3/11); Christopher N. Scogin (#21); and Javares Tobias (#160) contained undated Verifications and should be disallowed.  *Id.* at 5.

### a.      Illegible Verification Day: Javares Tobias (#160)

SDT argues that Javares Tobias' (#160) date is not visible, as it states only that it was signed in the month of "January," and lists the year (2013).  SDT argues that as a result, Tobias should be dismissed.  (R. Docs. 122-1, p. 5; 122-6, p. 6; 131, p. 4 & n.4).

In opposition, Lackey argues that Tobias' Verification date was written in pencil, which did not appear in the copy but was visible on the original document submitted to plaintiffs' counsel.  (R. Doc. 125, p. 9).  In support of their assertion, Lackey fails to submit the original document, but instead refers to an Affidavit from "Brian Doyle," who is not an attorney of record in this case but a member of Lackey's counsel's law firm staff.  *See* (R. Doc. 125-1, p. 3) ("First Doyle Affidavit").  Doyle declares that "[t]he date of [Tobias'] Verification is January 30, 2013, as filled in by Mr. Tobias in pencil.  Affiant spoke with Mr. Tobias on April 25, 2013, and Mr. Tobias stated that he remembers signing his Verification in pencil."  *Id.*[10]

Other courts have found that a Verification was sufficiently indicated where it specifies the "approximate date" of the signature, i.e., the month and year.  *See Pieszak v. Glendale Adventist Medical Center*, 112 F. Supp. 2d 970, 999 (C.D. Cal. 2000) (considering admissibility of declaration for purposes of summary judgment).  Here, the Court finds the date on Tobias' Verification incomprehensible, but further finds that his Verification does state the month (January) and year (2013) in which it was signed.  *See* (R. Doc. 122-6, p. 6).  The Court finds that Tobias' Verification sufficiently indicates the "approximate date" of the signature in January 2013.  The Court further

---

[10]Lackey argues that to the degree the Court finds the First Doyle Affidavit unpersuasive and concludes that the Verification is in fact "undated," Tobias should have the opportunity to correct this oversight.  *See* (R. Doc. 125, p. 9).  The Court does not reach this contention.

finds that because January 2013 is prior to the date by which Tobias was obligated to submit his proper Verification pursuant to the Court's Order, it is sufficiently timely. As such, Tobias is not subject to dismissal from the lawsuit on these grounds.

**b.      Omitted Verification Day: Delroy McNeal (11/2/11), Chad Davis (#231), and Christopher Scogin (#21)**

SDT further argues that the Verifications of Delroy McNeal (11/2/11), Chad Davis (#231), and Christopher Scogin (#21), while comprehensible, also fail to specify the day on which their Verifications were signed, and as a result all three class plaintiffs must be dismissed. (R. Doc. 122-1, p. 5; *see* 122-6). Specifically, Davis' Verification contains an "N/A" in the field where the date should have been placed the day. (R. Doc. 122-6, p. 1). Further, McNeal and Scogin's Verification dates are blank. *Id.* at 4-5. All three Verifications are, however, dated for the month of January, and the year 2013. *See id.* In opposition, Lackey argues that McNeal's Verification, received on February 7, 2013, was undated; however, McNeal faxed a supplemental Verification to plaintiffs' counsel on March 21, 2013. (R. Doc. 125, p. 9).

Upon inspection of the three Verifications, the Court finds that similar to Tobias' Verification, McNeal, Davis, and Scogin simply failed to include the *day* they signed their Verifications, but did include the *month* and *year*, i.e., January 2013. As such, the Court finds that all three Verifications are sufficiently "approximate," and that January 2013 is prior to the date at which proper Verifications must have been received. As such, all three of these Verifications are timely, and these plaintiffs are not subject to dismissal from the lawsuit on these grounds.

**c.      Switched Verification Day: Kendrick McCoy (#205)**

SDT argues that Kendrick McCoy's (#160) Verification was not dated correctly, and that he must be dismissed from this suit. *See* (R. Doc. 122-1, p. 5; 131, p. 4). According to SDT, McCoy

Verification reads "2 day of 27, 2013," which is not a date on the roman calendar. *See* (R. Doc. 122-6, p. 3). Therefore the Verification reads "Executed on the 2 day of 27 2013." (R. Doc. 122-6, p. 3).

In opposition, Lackey also argues that McCoy clearly made an *attempt* to date his Verification, and that it should have read "2 day of 27, 2013." (R. Doc. 125, p. 9).

The Court finds that since "27" is not a month of the calendar year, dismissing the Complaint as a result of this obvious oversight would be grossly inequitable, and that the definition of "submit" can be read to compensate for such mistakes. As such, the Court finds that Kendrick McCoy's Verification was timely submitted at some time during "2," or February, 2013. As such, McCoy's Verification is timely.

3. <u>Allegedly Forged Signatures</u>[11]

a. **Admitted "Forgeries": Marcus Christoff (#187), Ronald Smith (#73), Dion Coleman (6/1/11), Earl Jones (#220), and Byron J. Major (#13)**

SDT initially argued that the signatures of five plaintiffs - Marcus Christoff (#187), Ronald Smith (#73), Dion Coleman (6/1/11), Earl Jones (#220), and Byron J. Major (#13) - were signed in a manner which was "remarkably different" from those signatures which appeared in their other employee documents. (R. Doc. 122-1, p. 5). SDT seeks dismissal of these plaintiffs on that basis.

In opposition, Lackey argued that after receiving SDT's motion to dismiss, it attempted to

---

[11]Included in this category are: Marcus Christoff (#187), Ronald Smith (#73), Dion Coleman (6/1/11), Earl Jones (#220), Byron J. Major (#13), Zanzabar Cosse (#135), Derrick Harrison (#155), Benny Hernandez (#332), John C. James (#50), Byron Knapper (#334), Ashton Lee (#219), Tylertopher Pinkey (#133), Alvin Ross (#1), Troy Salsberry (5/13/11), Lloyd W. Smith (#199), Hayes Thompson (#241), Gerald Williams (#335), Melvin Soublet (#64), Billie Hines (#204), Christopher L. Paul (#22), Brentley Pevey (#94), Phillip Powell (#372), Patrick Price (5/13/11), and Javares Tobias (#160).

contact all 24 plaintiffs by telephone, and successfully reached 14 of them. *Id.* at 4-5.[12] Lackey admits that as a result of this contact two plaintiffs, Marcus Christoff (#187) and Ronald Smith (#73) stated orally that they did not sign their Verifications, but had others sign on their behalf. *Id.* at 6. There is no indication of this fact on either Verification.

At oral argument, Lackey further represented to the Court that three additional plaintiffs had admitted that they had failed to sign. These were Dion Coleman (6/1/11), whose sister signed; Earl Jones (#220), whose girlfriend signed; and Byron J. Major (#13), whose girlfriend signed. (R. Doc. 138-1, p. 13). Lackey subsequently attached Affidavits from Major and Jones to that effect. (R. Doc. 147-1, pp. 1-8). Lackey argues that these plaintiffs "beg the Court's indulgence" to be allowed to sign new Verifications, pointing out that there has been no prejudice to SDT as a result of the omission. (R. Doc. 125, p. 6).

As a result of these representations, SDT now argues that the five plaintiffs who have admitted to allowing others to sign their Verifications on their behalf should be dismissed. (R. Doc. 138, p. 2). SDT argues that these parties should be dismissed because, at a minimum, "the plaintiffs clearly did not answer the discovery requests under penalty of perjury if they did not sign them." (R. Doc. 131, p. 5).

Rule 33(a) states that "The interrogatories must be answered by the parties to whom they are directed." *Id.* Rule 33(b)(5) states that for Interrogatories, "[t]he person who makes the answers must sign them." *Id.* Although the Rule provides that public or private corporations, partnerships, associations, or government agencies may authorize a representative to sign on their behalf, this

---

[12]According to the Affidavit of Bryan P. Doyle, attached to Lackey's motion, these fourteen individuals were Zanzabar Cosse (#135), Billie Hines (#204), John C. James (#50), Ashton Lee (#219), Phillip Powell (#372), Patrick Price (5/13/11), Alvin Ross (#1), Lloyd W. Smith (#199), Ronald Smith (#73), Marcus Christoff (#187), Melvin Soublet (#64), Hayes Thompson (#241), Javares Tobias (#160), and Gerald Williams (#335) (R. Doc. 125-1, p. 2).

authority is not expressly extended to other litigants.  *See* Rule 33(b)(1)(B).  Courts have stated that even *pro se* plaintiffs may not allow co-plaintiffs to sign interrogatories on their behalf.  *Mays v. I.R.S.*, 2004 WL 909526, at *2 (D. Minn. Mar. 11, 2004) ("Plaintiff . . . must participate in this case by, for example, answering discovery requests on her own behalf . . . . In this regard, Plaintiff . . . must sign the answer provided in [an] Interrogatory.").  Deviation from this rule is almost never granted.  *See Miller v. Holzmann*, 238 F.R.D. 111, 111-12 (D.D.C. 2006) (finding that individual suffering from dysnomia and agnosagnosia was permitted to execute a limited power of attorney to sign Interrogatory responses on his behalf).  Ultimately, unsigned interrogatories, or signed interrogatories which are not made under penalty of perjury, "cannot be considered for any purpose."  *Williams v. Dallas Police Department*, 2007 WL 1655583, at *2 (N.D. Tex. June 1, 2007).

Here, Plaintiff's counsel represented to the Court that none of these five plaintiffs signed their Interrogatories, and there have been no allegations that any of the plaintiffs suffer from mental impairments or have sought to grant a power of attorney.  The Court remarked at oral argument that this circumstance constituted an admission of a falsehood; as Plaintiff's counsel conceded at oral argument, these Plaintiffs "should know better."  (R. Doc. 138-1, p. 13).

However, the Court finds that although these plaintiffs have knowingly admitted a falsehood, which may impact a credibility determination at a later stage of the case, their attempt to submit verifications by authorizing others to sign on their behalf was not necessarily a "forgery" as represented by SDT.  "Forge" has been defined as "to sign another person's name to a document, with a deceitful and fraudulent intent."  Black's Law Dictionary 778-79 (4th ed. 1968).  There has been no indication by either party that any of these plaintiffs, by allowing others to sign on their behalf, had the specific intent to deceive or defraud the court.  Instead, this circumstance better

resembles an attempt, albeit a misguided one, to comply with legal obligations to submit Verifications, and as such is a curable defect.

Given that dismissal under Rule 37(b) is a draconian remedy and the scope of "properly" is not defined in the presiding U.S. District Judge's Order, the Court recommends that these plaintiffs, in making an attempt to comply with their obligations under the law, have submitted responses which were "properly verified" within the scope of that definition, and did so prior to the March 12, 2013 deadline.  The Court further recommends that these five plaintiffs be granted no more than fifteen (15) days after the adoption of this Report and Recommendation to supplement their Verifications.

> **b.     Expert Findings of Actual or Probable "Forgery": Zanzabar Cosse (#135), Derrick Harrison (#155), Benny Hernandez (#332), John C. James (#50), Byron Knapper (#334), Ashton Lee (#219), Tylertopher Pinkey (#133), Alvin Ross (#1), Troy Salsberry (5/13/11), Lloyd W. Smith (#199), Hayes Thompson (#241), Gerald Williams (#335), and Melvin Soublet (#64)**

> ### i.     "Eyeball" Test

In support of its Motion, SDT argues that the discovery responses for several class plaintiffs also do not appear to be genuine.  These plaintiffs are Zanzabar Cosse (#135), Derrick Harrison (#155), Benny Hernandez (#332), John C. James (#50), Byron Knapper (#334), Ashton Lee (#219), Tylertopher Pinkey (#133), Alvin Ross (#1), Troy Salsberry (5/13/11), Lloyd W. Smith (#199), Hayes Thompson (#241), Gerald Williams (#335), and Melvin Soublet (#64).  (R. Doc. 122-1, p. 5).  SDT argues that there are "telling" differences between the signatures of these individuals on their Verifications, and the signatures which appear on their employment documents.  *Id.*  Because the veracity of the signatures has been called into question, SDT argues that these individuals have not submitted "properly verified" answers to interrogatories, and therefore must be dismissed.  *Id.*

18

at 6.

At oral argument, Lackey argued that SDT's interpretation of the signatures is subjective, and SDT has offered no proof of its expertise in comparing signatures. (R. Doc. 125, p. 4). At that time, Lackey's counsel stated:

> MR. HUFFMAN: Let's deal with sort of some of the easier ones first. The forgery I don't see a handwriting expert with an affidavit with respect to these issues. . . . .
> THE COURT: I don't know. I don't qualify as one I have to tell you.
> MR. HUFFMAN: I just see an eyeball test: this doesn't look like the same person. . . . .
> MR HUFFMAN: With respect to one individual he talks about . . . . I have a pretty good idea what his signature looks like. It is his signature.
> THE COURT: Now you are the expert.
> MR. HUFFMAN: Well, that's correct.
> THE COURT: You are eyeballing it?
> MR. HUFFMAN: You are correct, you are right, Your Honor. But I don't think an attorney eyeballing is the basis for making a judgment in these situations. I think Your Honor is correct.

(R. Doc. 138-1, pp. 11-12).

Moreover, according to Lackey, after being notified about the signatures issue, counsel began contacting the plaintiffs in question. *Id.* at 5. Lackey states that Zanzibar Cosse (#135), Melvin Soublet, (#64), and Patrick Price (5/3/11) submitted affidavits stating that they personally signed both the consent to opt in to the plaintiff class, as well as the Verification of discovery responses. (R. Docs. 125, p. 5; 125-2, 125-3, 125-4). Subsequently, Troy Salsberry (5/3/11), Billie Hines (#204), Lloyd W. Smith (#199), and HayesThomspon (#241) also submitted affidavits affirming the same. (R. Docs. 147, pp. 2-3; 147-1, pp. 10-13 16-21, 24-27).[13] Lackey also stated that John

---

[13]Lackey also argues that one plaintiff, Troy Salsberry (5/13/11), was not contacted, but that counsel met with him early in the litigation, in which he stated that he had suffered a stroke during the course of his employment with SDT, and the time he signed his Verification form. (R. Doc. 125, p. 5). According to Lackey, counsel observed that Salsberry exhibited signs of "slight partial paralysis" and slurred speech during this meeting. *Id.* "Considering his medical condition, a considered decision was made not to call him to question him regarding the authenticity of his signature." *Id.* Given that Salsberry has now submitted a sworn declaration, the Court need not address the impact of his medical condition.

C. James (#50), Ashton Lee (#219), Phillip Powell (#372), Alvin Ross (#1), Javares Tobias (#160), Gerald Williams (#335), Christopher Paul (#22), and Brentley Pevey (#94) have verbally informed Lackey that the Verifications were indeed their own. (R. Doc. 147, p. 3 & n.2). Lackey states that "despite continuing efforts, there has been no response" from four additional plaintiffs: Derrick Harrison (#155), Benny Hernandez (#332), Byron Knapper (#334), and Tylertopher Pinkney (#133). *Id.*

The Court finds that, having pre-emptively disavowed its own expertise in the field of handwriting forensics, there are no grounds to contradict the statements of any class plaintiff who has submitted an additional sworn affidavit affirming that his or her signatures, as included on the Verifications, were true and correct. The Court will not independently conduct an "eyeball" test of the signatures, and the class plaintiffs plainly deserve the benefit of the doubt.

### ii.      Impact of Submission of "Expert" Testimony

At oral argument, after the "eyeball test" exchange occurred between counsel and the Court, counsel for Plaintiffs stated:

> MR. HUFFMAN . . . .The best this is to have somebody under oath say this is my signature, this is not my signature . . . .
> THE COURT: Yes, or a handwriting expert?
> MR. HUFFMAN: Correct.

(R. Doc. 138-1, pp. 11-12).

After oral argument, SDT submitted into the record (1) a copy of the transcript, and (2) the report of a forensic expert, Robert G. Foley, ("Foley"). (R. Doc. 138-1, pp. 23-33). Foley also executed a sworn affidavit. *Id.* at 22-23. In his report, Foley states that he compared the signatures of each plaintiff to employment documents which the plaintiffs had signed in the ordinary course of business, as contained in their respective employee personnel files. *Id.* at 28-30. Foley concludes

that several of the above-mentioned plaintiffs either did not sign the Verification Forms, or that there was a "strong probability" that they did not sign.

In opposition, Lackey argues that authority exists to allow a party to attack the veracity of a sworn declaration with expert opinion at the discovery stage of proceedings. *Id.* According to Lackey, "it would be harsh indeed to require those plaintiffs, who have sworn that the signature is their own, to provide additional evidence to defeat this allegation." *Id.*

There is a dearth of case law on the issue of whether a trial court may consider the opinion of a handwriting expert at the discovery stage of a case. However, it is clear that federal courts have the authority "to fashion an appropriate sanction for conduct which abuses the judicial process," which includes fraud on the court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *See In re Stewart*, 2008 WL 5096011, at *4 (Bankr.E.D. La. Oct. 15, 2008). As such authority stems from the Court's "inherent power," which is shielded from direct democratic control, it must be exercised with restraint and discretion. *Roadway Express*, 447 U.S. at 763-65.

Subsequent cases have remarked that "a trial court clearly has the authority to examine the authenticity of the evidence before submitting it to a jury." *Gilmer v. Colorado Institute of Art*, 12 F. App'x 892, 893-95 (10th Cir. 2001) (noting that trial court properly considered handwriting expert's appraisal in motion to dismiss following evidentiary hearing, where motion to dismiss was premised upon evidence of forgery uncovered in discovery). Other courts commonly dispose of cases at the motion to dismiss stage, where forgery is established. *See, e.g., Shri Lakshmi Cotsyn Ltd. v. HM International Group, Inc.*, 2013 WL 1222718, at *2-*4 (D.N.J. Mar. 25, 2013) (considering expert's conclusion that a signature was forged in contract dispute involving enforcement of arbitration clause).

Here, SDT has alleged that the signatures of several class plaintiffs are markedly different, implying that a fraud has been committed on the Court.  Obviously, the Court may consider Foley's report for whatever value it may add, in order to assist in resolving the limited question of whether a fraud has been committed on the court.

> **(1)      Plaintiffs Who Submitted Affidavits: Zanzabar Cosse (#135), John C. James (#50), Ashton Lee (#219), Alvin Ross (#1), Troy Salsberry (5/13/11), Lloyd W. Smith (#199), Hayes Thompson (#241), and Gerald Williams (#335)**

Foley concluded that Zanzabar Cosse (#135), John C. James (#50), Ashton Lee (#219), Alvin Ross (#1), Troy Salsberry (5/13/11), Lloyd W. Smith (#199), Hayes Thompson (#241), and Gerald Williams (#335) did not sign their Verifications.  (R. Doc. 138-1, p. 30).  Foley also concluded that there was a "strong possibility" that Melvin Soublet (#64) did not sign his Verification.  *Id.*

In opposition Lackey concedes that SDT has gone to "extraordinary" lengths to prove that the signatures of these individuals were forged.  (R. Doc. 147, p. 3).  Lackey reiterates that sworn Affidavits have been submitted from these class plaintiffs in support of these claims.

The Court finds that in a circumstance where a sworn Affidavit has been submitted in order to counteract allegations of fraud, there is no clear resolution.  Clearly, all of these plaintiffs deserve the benefit of the doubt in a situation involving competing claims of validity.  SDT's motion to dismiss these plaintiffs based on allegations that they forged their Verification signatures is denied.  As such, these proper Verifications were submitted timely for purposes of the District Judge's Order.

> **(2)      Plaintiffs Who Did not Submit Affidavits: Derrick Harrison (#155), Benny Hernandez (#332), Byron Knapper (#334), and Tylertopher Pinkney (#133)**

Foley also concluded that all four of the Plaintiffs who apparently failed to respond to

Lackey's inquiries regarding the procurement of a sworn affidavit did not sign their Verifications: Derrick Harrison (#155), Benny Hernandez (#332), Byron Knapper (#334), and Tylertopher Pinkney (#133) (R. Doc. 138-1, p. 30). Lackey does not make any arguments as to why these four Plaintiffs should not be dismissed.

The Court finds that Lackey represented at oral argument that a handwriting expert could be used to verify the accuracy of signatures. (R. Doc. 138-1, p. 12). That is precisely what SDT has done here. Lackey had an opportunity to respond to the conclusions in Foley's report by procuring affidavits to contradict Foley's findings, but failed to do so. Indeed, Lackey failed to raise any argument at all regarding these four plaintiffs. Thus, the Court is confronted with a circumstance in which Lackey has essentially "abandoned" any argument it could have made, and has failed to contest SDT's expert findings. Having failed to furnish any indicia these plaintiffs did not or would not sign their Verifications, that they authorized others to sign on their behalf, or otherwise raised arguments to persuade the Court that the defect was a curable one, the Court concludes that the Verifications of Harrison, Hernandez, Knapper, and Pinkney were not signed. Having not submitted proper Verifications by the Court's March 12, 2013 deadline, all four of these class plaintiffs should now be dismissed.

> **c.    Additional Alleged "Forgeries": Billie Hines (#204), Christopher L. Paul (#22), Brentley Pevey (#94), Phillip Powell (#372), Patrick Price (5/13/11), and Javares Tobias (#160)**

In its original Motion, SDT also argued that the signatures of an additional seven class plaintiffs appeared to be forged. These plaintiffs were Billie Hines (#204), Christopher L. Paul (#22), Brentley Pevey (#94), Phillip Powell (#372), Patrick Price (5/13/11), and Javares Tobias (#160). However, in its Reply, which incorporated the findings of its forensic expert, SDT restricted

its allegations of "forgery" to those plaintiffs who its expert concluded did not sign the Verifications, or for whom a failure to sign was "probable." (R. Doc. 138, p. 2). None of the above-mentioned plaintiffs were included - presumably because its expert found a "strong probability" that these individuals actually signed the Verifications in question. *See* (R. Docs. 138, p. 2; 138-1, pp. 30-31).

The Court finds that SDT, by relying on the findings of its expert and not providing a separate basis for re-urging its allegations of "forgery" as to Hines, Paul, Pevey, Powell, Price, and Tobias, is deemed to have abandoned its original allegations of fraud against them.[14] No other argument has been asserted that their Verifications were untimely or not properly verified. These plaintiffs timely submitted properly verified forms in compliance with the District Judge's Order.

### 4.   Inconsistent Certificates of Service and Verification Dates[15]

---

[14]To the degree SDT's allegations of "forgery" survive this restriction, the Court finds that no credible argument or evidence has been advanced to sustain them.

[15]The class plaintiffs included in this section of SDT's argument are: Glen Roy Alveris (#161), Ronald Alveris (#72), Patty Barrow (#68), Vernon Bastian (#134), Terrance Bealer (#362), Jeremy Bienemy (#123), Terika Bienemy (#151), Ternell Bienemy (#140), Ernest Blunt (#269), Tysha Bolden (#115), Damon Boult (#98), Lucien Boutte (#136), Michael P. Breaux (#107), Connie Brown (#25), Darryl Brown (#340), Foster Borwn (#249), Christopher Brumfield (#356), Darlin Adandel Bu (#316), Leonard J. Bush, Jr. (#290), Joseph L. Cabiran, IV (#317), Earl Calvey (#259), Corey Campbell, Sr. (#26), Nathaneil Carpenter (#183), Bryant C. Carter (#320), Marcus Christoff (#187), William R. Christy (#359), Louis Claiborne, Jr. (#275), Donald Claude (#311), Darryn Clouatre (#261), Darren Cole (#200), Jermain Cole (#245), Zanzabar Cosse (#135), Troy Cyres (#86), Christi Davis (#154), Shaw Dovis (#76), Randy R. Day (#110), Torrey Day (#85), Jack D. Deleon (#368), Antonio Donahue (#257), David Dumones (#331), Tammie B. Edwards (#80), Ellis Ezeb (#266), Furnell Farmer (#37), Jason Favre (#44), Roxanne Floyd (#74), Floyd Foley, Jr. (#209), Derrick Francois (#171), Spencer Franklin (#157), Jerry Frazier (#247), Roger Fulford (#137), Robert Jude Gay (5/17/11), John B. Gillis (#49), Wayne R. Glasper (#278), Micah Glover (#195), Dimitri Guter (#117), Alfred Hamilton (6/14/11), Ariza Harris (#337), Derrick C. Harrison (#155), Lester Harrison (#234), Rose Harrison (#253), Corey Hart (#27), Anthony L. Hawkins (#2), Benny Hernandez (#332), Keith Hill (#54), Morris Hilliard (#193), Billie Hines (#204), Tyran Holden (#360), William Horton (#91), Craig Ingram (#366), Willie Ingram, Jr. (#169), Bobby James (#7), John C. James (#50), Roosevelt Jimerson, Jr. (#267), Kevin M. Johnson, Jr. (#252), Terry D. Johnson (#281), Cail Jones, Jr. (#15), Joe Louis Jones, Jr, (#293), Karl Joseph (#52), Jeremy Justice (#100), Raven Kindle (#131), Tanya Lackey (Nicolini) (5/16/11), Byron J. LaFrance (#11), Aston Lee (#219), Byron Lee (#12), Leonard E. Lee, Jr. (#127), Gerald Little (#121), Cleve Chelle Lombard (#23), Michael Long (#129), Jarren Love (#246), Rochon J. Mackie (#113), Demond Magee (#302), Melvin Mahoney, Jr. (#225), Byron J. Major (#13), Joseph Major, III (#125), Victor Manuel (#89), Harold Marks (#365), Clozell M. Mason (#24), Tyron A. McEwen (#174), Randy D. McGary (#69), Kelvon McKenzie (#103), Darreck Mixon (#323), Leontine Morgan (224), Freddie Morrison (#306), Paul J. Murphy (#109), Nat Myles (#173), Dale Nicolini (5/6/11), Christopher Paul (#22), John A. Pausch (#48), Warren Peck, Jr. (#190), Eddie E. Perdue (#35), Max E. Perry (10/10/11), Michael Perry (8/12/11), Brently Pevey (#94), Phillip Powell (#372), Patrick Price (5/13/11), Leonardo Ramirez (#128), Rosendo Ramirez-Velasco (#130), August A. Richards (#5), Ricardo Rivera (#70), Lawrence Robertson

### a.   Parties' Contentions

SDT also seeks dismissal of 153 class plaintiffs who submitted unverified discovery responses.  (R. Doc. 122-1, p. 6, 122-9).[16]  SDT contends that Verifications submitted between October 1, 2012 and December 19, 2012 did not contain the phrase "under penalty of perjury."  *Id.* Instead, they were worded as follows:

> I, [plaintiff's name] do hereby verify that the responses to the Interrogatories and Requests for Production propounded upon me by Defendants, SDT . . . and attached hereto, are truthful and accurate as written, based upon my personal knowledge and information.

(R. Doc. 122-7, p. 21).  SDT argues that on January 3, 2013, it alerted Lackey that the language of this text block was defective.  *Id.*  On February 21 and 26, 2013, and March 12, 2013, Lackey submitted "what purported to be proper discovery responses," which according to SDT contained the following language:

> I, [plaintiff's name] do hereby verify, **under penalty of perjury**, that the responses to the Interrogatories and Requests for Production propounded on me by defendants, SDT . . . and attached hereto, are true . . . and correct.

(R. Doc. 122-1, p. 6) (emphasis in original and omitted).

However, SDT argues that for 153 plaintiffs, the certificates of service pre-date the Verifications, which suggests that Lackey provided *only* the Verification pages to these plaintiffs,

---

(#57), John Robinson (#353), Ricky Robinson (#71), Alvin Ross (#1), Troy Salsberry (5/13/11), Keddrick Sanders (#53), Jermaine Singleton (6/6/11), John Smith (5/17/11), Johnny L. Smith, III (#342), Lloyd Smith (#199), Michael J. Smith (#271), Ernest L. Snowden (#36), Melvin Soublet (#64), Robert Squall (#326), Jonathan Steele (#329), Gerald Stewart (#184), Larry Swan (5/13/11), Kelvin Taylor (9/15/11), Troy F. Taylor (#87), Michael Tobias (#65), Amani J. Toomer (#296), Quinton Torbor (#216), Cyril Vegas (#285), Fernando Wallace (#99), Jeffrey Washington (#46), Willie Washington (12/16/11), Corey Watts (#258), Levoice Weary, Jr. (#229), Jason Whitaker (#45), Ronnie White, Jr. (5/26/11), D.C. Williams (#97), Tia Williams (#114), Jesse Wilson (#47), Edward J. Wylie (#212).

[16]Of the names included in this list, two plaintiffs - Derrick C. Harrison (#155) and Benny Hernandez (#332) - should be, based on the foregoing, dismissed from this lawsuit and thus the number of class plaintiffs affected by this section of the Court's analysis is 151, not 153.  The Court will refer to the "153" number present in SDT's moving papers to avoid any confusion.

and did not contemporaneously transmit the discovery responses along with them. *See id.* As a result, SDT argues that the Verifications are defective because they cannot represent the consent of these plaintiffs to "verify" discovery which was not "attached," as stated in the Verification. *See id.* At oral argument, SDT argued that verified discovery responses were essential to this case because without verified responses to interrogatory answers there was nothing which SDT could use for impeachment purposes at trial or at a deposition. (R. Doc. 138-1, p. 10). Moreover, SDT argued that both parties were limited to 35 depositions each in this case, and with 153 class plaintiffs having submitted unverified responses, it would be impossible to actually obtain statements from each plaintiff for use at trial. See id. For these reasons, SDT argues that the "Verifications" of these 153 plaintiffs were inadequate, and should be dismissed pursuant to the February 25, 2013 Order. *See* (R. Doc. 138, p. 2).

Lackey concedes that the "initial unsworn Verifications were inadequate for failing to include a declaration 'under penalty of perjury' that the person's discovery responses were true." (R. Doc. 125, p. 8). However, Lackey argues that the underlying discovery responses remained unchanged, and that with the updated Verifications made "under penalty of perjury," the updated Verifications were "again verifying the discovery responses that they had previously given." (R. Doc. 147, p. 4). As such, the responses are "indisputably timely." *Id.* at 1. Even if they were not, Lackey contends that "[t]he procedural rules are devised to promote the ends of justice, not to defeat them," and that the broad discretion of the Court should be exercised to "relieve counsel or parties from the consequences of *excusable* error or neglect." *Id.* at 1-2 (citation omitted).

### b.     Second Doyle Affidavit

After oral argument, Lackey submitted a second Affidavit from paralegal Brian P. Doyle,

26

("Doyle") who affirms that he "has worked upon obtaining and serving the discovery responses from Plaintiffs in this matter."  (R. Doc. 134, p. 2) ("Second Doyle Affidavit").[17]  In the Second Doyle Affidavit, Doyle described the process by which counsel responded to the discovery requests.  *Id.*

Specifically, Doyle states that after discovery was received in this case, counsel wrote to "each of the 395 plaintiffs," informing each class plaintiff of receipt of SDT's discovery responses, and "enclosed a questionnaire to the plaintiffs to complete which would provide answers to the various Interrogatories and Requests for Production of Documents and advising the plaintiffs to return the completed questionnaires." *Id.*[18] Doyle then states that each class plaintiff's responses were taken from the questionnaire, placed into the appropriate places in the discovery requests, and returned to each plaintiff to obtain their signatures. *Id.* The Verifications, once received, were re-submitted to SDT. *Id.* at 3.[19]

After being notified by SDT that the Verifications were defective, counsel sent each class plaintiff an updated Verification form, along with a letter explaining that the class plaintiff was required to update his or her Interrogatory Verifications. (R. Doc. 134-1, p. 1). Counsel did not include the original discovery requests in its communication to plaintiffs. (R. Doc. 134, p. 3). As counsel received the Verifications from class plaintiffs, the Verifications were "attached . . . to

---

[17]The Court required affidavits from (1) counsel responsible for handling the matter, and (2) a paralegal responsible. (R .Doc. 138-1, pp. 17-19). After the hearing, Lackey submitted only an affidavit from paralegal Doyle, failing to submit affidavits from counsel as instructed by the Court.

[18]SDT has at no time moved for dismissal of any plaintiffs other than the 153 originally mentioned in its original Motion, and in fact reiterated that it only sought dismissal of these 153 plaintiffs in the Sur-Reply which it filed in response to the Second Doyle Affidavit. *See* (R. Doc. 138, pp. 2-4). Therefore, the Court does not reach the issue of whether the Verifications, as stated in the Second Doyle Affidavit, would invalidate the discovery responses of any other class plaintiffs.

[19]Lackey has not attached the "questionnaire" which was used, nor described the contents of the "questionnaire." The discovery requests at issue have not been attached to this motion.

copies of the previously produced discovery and resubmitted the responses with the updated Verifications." *Id.* at 4.

### c.    Analysis

The Fifth Circuit has found that a Verification under 28 U.S.C. § 1746 need not explicitly track the language of the statute, but must at least contain statements that the unsworn statement is made "under penalty of perjury" and verified as "true and correct." *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988). The language of such Verifications must not, however, "allow[] the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods." *Id.*

There is no controlling precedent requiring that a Verification be attached to any actual discovery responses. Other courts have found that a party which takes prompt subsequent remedial measures to correct defects in an affidavit may be entitled to have those affidavits "relate back" to the evidence sought to be introduced. *Elwakin v. Target Media Partners Operating Co., LLC*, 901 F. Supp. 2d 730, 738 (E.D. La. 2012) (citing *In re Favre*, 342 F. App'x 5, 8-9 (5th Cir. 2009)). Moreover, a Declaration need not be comprehensive, so long as it makes statements which "if false in any material respect," would subject a person to perjury penalties. *See United States v. McNeal*, 82 F. Supp. 2d 945, 950 (S.D. Ind. 2000) (finding that affidavit stating that party resided at a specific residence was sufficient in criminal case involving defense of unreasonable search and seizure).

The Court directly addressed the distinction between an explicit reference and the lack thereof at oral argument, when it asked counsel about the contents of the letter requesting updated Verifications:

MR. KORETZKY: There were no proper Verifications.
THE COURT: So they were kind of sloppy . . . .

28

> MR. KORETZKY: . . . They have had no chance. They had no chance to review anything.
>
> THE COURT: How do we know that?
>
> MR. KORETZKY: They weren't sent anything other than the form.
>
> . . . .
>
> THE COURT: Oh, is that true? Did you just send your people the Verifications and not the actual discovery?
>
> MR. HUFFMAN: I don't recall. I wasn't in the office when this went on.
>
> THE COURT: Who was the . . . person in your office who had the responsibility of taking care of this needed responsibility?
>
> MR. HUFFMAN: I guess our managing partner . . . and my associate. . . .
>
> THE COURT: I want a supplement from you . . . I want you to get their affidavits so they can tell me what they did, because I don't know if it's fair for me to conclude that they . . . only sent the Verifications.  But if they did only send the Verifications, I think I ought to know.
>
> . . . .
>
> THE COURT: You have got to give me an adequate response . . . . was [the letter] just a, hey, sign this Verification form kind of letter? Or was it a letter saying here is your discovery along with the Verification form.  After you review, please sign the form.

(R. Doc. 138-1, p. 18).  According to the Second Doyle Affidavit the letter in question stated,

> We have received your completed questionnaire and signed Verification form and have provided these to counsel for SDT.  However, please be advised that the Judge in this mater has requested that **new Verifications** be obtained from all plaintiffs who have previously submitted signed Verifications attesting that the Verifications are signed **under penalty of perjury**.  The previous Verification that you signed did not contain the "under penalty of perjury" language, so we are requesting that you sign and return the enclosed, revised, Verification with the added language.

(R. Doc. 134-1, p. 4) (emphasis in original).

As noted above, an unsworn declaration which is not attached to the Interrogatories may be enforceable where it explicitly refers to those Interrogatories.  *World Trade Center*, 2012 WL 5199383, at *3.  In this case, both the original and supplementary Verifications specifically reference "the Interrogatories and Requests for Production propounded upon me by Defendants, SDT . . . ."  Further, the letter sent from counsel to each class plaintiff explicitly states that the new Verification relates back to the discovery previously propounded.  Although admittedly both "Verifications"

contain the phrase "attached hereto," and the second Verification has no questionnaire "attached," the Court finds that on balance the two Verifications relate to the same discovery request. As such, the second Verification is enforceable.

As such, the Court finds that these 153 class plaintiffs properly verified their responses to SDT's discovery within the meaning of the District Judge's Order. Since there has been no allegation that these Verifications were not received in a timely manner, SDT's Motion to Dismiss these 153 plaintiffs is denied.

### C.   <u>Attorney's Fees</u>

SDT also seeks an award of attorney's fees under Rule 37(b) for Lackey's "fail[ure] to comply with the Court's February 25, 2013 Order." (R. Doc. 122-1, p. 8). Neither party contends that an imposition of attorney's fees is outside the scope of the District Judge's referral. The Court finds that although the Order restricted the Court's authority as it related to determination of the claims in this suit, it did not speak to whether an award of attorney's fees was also available.

Rule 37(b) provides that "Instead of *or in addition to* the orders above, the court must order the disobedient party, the attorney advising that party, or both, to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Rule 37(b)(2)(C) (emphasis added). When allocating Rule 37(b) sanctions in the class action context, courts have looked to whether an attorney was acting within the "scope of authority" delegated to them by the Plaintiffs. *Merritt v. International Brotherhood of Boilermakers*, 649 F.2d 1013, 1017-19 (5th Cir. 1981).

In this case, the Court finds an award of attorney's fees to be unjust for two principal reasons. First, the Rule 37(b) analysis itself was truncated. Second, although SDT sought dismissal

of 180 plaintiffs in the instant motion, only a fraction of these individuals have ultimately been dismissed.  In these circumstances, the Court finds that Lackey's position has been substantially justified, and that no award of fees is warranted.

**IV.** **Recommendation**

Accordingly,

**IT IS RECOMMENDED** that Defendants, SDT Waste & Debris Services, LLC, et al.'s, ("SDT") **Defendants' Rule 37(b) and 41(b) Motion to Dismiss and Request for Attorney's Fees (R. Doc. 122)** be **GRANTED** in part and **DENIED** in part, as follows:

It be **DENIED** as to Edelia Garza (#303), Terrill Hills, Jr., (#81), Stephen Mercadel (#78), and Allen Pearson (#145) for making a good faith attempt to submit.

It be **GRANTED** as to Deverren J. Allen (#263), Leroy Kyle Aultmon (#58), Corey R. Charles (#279), Larry Gordon (#104), John H. Holmes (#363), Arthur E. Jackson, III (#3), Daneille C. Jones (#237), Salvador E. Lauricella (#196), Andre T. Matthews (#308), DeRoy McNeal (11/3/11), and Wilbert Robinson (#138) for failing to timely submit.

It be **DENIED** as to Javares Tobias (#160) for providing an illegible Verification day, for the reasons provided above.

It be **DENIED** as to Delroy McNeal (11/2/11), Chad Davis (#231), and Christopher Scogin (#21) for omitting the day from their Verifications.

It be **DENIED** as to Kendrick McCoy (#205) for switching the day and month on his Verification.

It be **DENIED** as to Marcus Christoff (#187), Ronald Smith (#73), Dion Coleman (6/1/11), Earl Jones (#220), and Byron J. Major (#13) for failing to submit signed Verifications.  These

plaintiffs are granted no more than fifteen (15) days after the adoption of this Report and Recommendation to supplement their Verifications.

It be **DENIED** as to Zanzabar Cosse (#135), John C. James (#50), Ashton Lee (#219), Alvin Ross (#1), Troy Salsberry (5/13/11), Lloyd W. Smith (#199), Hayes Thompson (#241), and Gerald Williams (#335) because these parties submitted Affidavits to contradict SDT's expert findings that these individuals had not signed their Verifications.

It be **GRANTED** as to Derrick Harrison (#155), Benny Hernandez (#332), Byron Knapper (#334), and Tylertopher Pinkney (#133) because these parties did not submit Affidavits to contradict SDT's expert findings that they had not signed their Verifications.

It be **DENIED AS MOOT** as to Billie Hines (#204), Christopher L. Paul (#22), Brentley Pevey (#94), Phillip Powell (#372), Patrick Price (5/13/11), Melvin Soublet (#64), Javares Tobias (#160) for withdrawal of Plaintiff's "forgery" allegations.

It be **DENIED** as to Glen Roy Alveris (#161), Ronald Alveris (#72), Patty Barrow (#68), Vernon Bastian (#134), Terrance Bealer (#362), Jeremy Bienemy (#123), Terika Bienemy (#151), Ternell Bienemy (#140), Ernest Blunt (#269), Tysha Bolden (#115), Damon Boult (#98), Lucien Boutte (#136), Michael P. Breaux (#107), Connie Brown (#25), Darryl Brown (#340), Foster Borwn (#249), Christopher Brumfield (#356), Darlin Adandel Bu (#316), Leonard J. Bush, Jr. (#290), Joseph L. Cabiran, IV (#317), Earl Calvey (#259), Corey Campbell, Sr. (#26), Nathaneil Carpenter (#183), Bryant C. Carter (#320), Marcus Christoff (#187). William R. Christy (#359), Louis Claiborne, Jr. (#275), Donald Claude (#311), Darryn Clouatre (#261), Darren Cole (#200), Jermain Cole (#245), Zanzabar Cosse (#135), Troy Cyres (#86), Christi Davis (#154), Shaw Dovis (#76), Randy R. Day (#110), Torrey Day (#85), Jack D. Deleon (#368), Antonio Donahue (#257), David Dumones (#331),

Tammie B. Edwards (#80), Ellis Ezeb (#266), Furnell Farmer (#37), Jason Favre (#44), Roxanne Floyd (#74), Floyd Foley, Jr. (#209), Derrick Francois (#171), Spencer Franklin (#157), Jerry Frazier (#247), Roger Fulford (#137), Robert Jude Gay (5/17/11), John B. Gillis (#49), Wayne R. Glasper (#278), Micah Glover (#195), Dimitri Guter (#117), Alfred Hamilton (6/14/11), Ariza Harris (#337), Lester Harrison (#234), Rose Harrison (#253), Corey Hart (#27), Anthony L. Hawkins (#2), Keith Hill (#54), Morris Hilliard (#193), Billie Hines (#204), Tyran Holden (#360), William Horton (#91), Craig Ingram (#366), Willie Ingram, Jr. (#169), Bobby James (#7), John C. James (#50), Roosevelt Jimerson, Jr. (#267), Kevin M. Johnson, Jr. (#252), Terry D. Johnson (#281), Cail Jones, Jr. (#15), Joe Louis Jones, Jr, (#293), Karl Joseph (#52), Jeremy Justice (#100), Ramon Kindle (#131), Tanya Lackey (Nicolini) (5/16/11), Byron J. LaFrance (#11), Aston Lee (#219), Byron Lee (#12), Leonard E. Lee, Jr. (#127), Gerald Little (#121), Cleve Chelle Lombard (#23), Michael Long (#129), Jarren Love (#246), Rochon J. Mackie (#113), Demond Magee (#302), Melvin Mahoney, Jr. (#225), Byron J. Major (#13), Joseph Major, III (#125), Victor Manuel (#89), Harold Marks (#365), Clozell M. Mason (#24), Tyron A. McEwen (#174), Randy D. McGary (#69), Kelvon McKenzie (#103), Darreck Mixon (#323), Leontine Morgan (224), Freddie Morrison (#306), Paul J. Murphy (#109), Nat Myles (#173), Dale Nicolini (5/6/11), Christopher Paul (#22), John A. Pausch (#48), Warren Peck, Jr. (#190), Eddie E. Perdue (#35), Max E. Perry (10/10/11), Michael Perry (8/12/11), Brently Pevey (#94), Phillip Powell (#372), Patrick Price (5/13/11), Leonardo Ramirez (#128), Rosendo Ramirez-Velasco (#130), August A. Richards (#5), Ricardo Rivera (#70), Lawrence Robertson (#57), John Robinson (#353), Ricky Robinson (#71), Alvin Ross (#1), Troy Salsberry (5/13/11), Keddrick Sanders (#53), Jermaine Singleton (6/6/11), John Smith (5/17/11), Johnny L. Smith, III (#342), Lloyd Smith (#199), Michael J. Smith (#271), Ernest L. Snowden (#36), Melvin Soublet (#64), Robert Squall (#326), Jonathan Steele (#329), Gerald Stewart (#184), Larry Swan (5/13/11), Kelvin Taylor (9/15/11), Troy F. Taylor

(#87), Michael Tobias (#65), Amani J. Toomer (#296), Quinton Torbor (#216), Cyril Vegas (#285),

Fernando Wallace (#99), Jeffrey Washington (#46), Willie Washington (12/16/11), Corey Watts

(#258), Levoice Weary, Jr. (#229), Jason Whitaker (#45), Ronnie White, Jr. (5/26/11), D.C. Williams

(#97), Tia Williams (#114), Jesse Wilson (#47), and Edward J. Wylie (#212), for the reasons provided

above.[20]

It be **DENIED** as to attorney's fees, as they are not substantially justified.[21]

New Orleans, Louisiana, this 20th day of September 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[20]Omitted from this list are Derrick C. Harrison (#155) and Benny Hernandez (#332), who were dismissed based on the foregoing Order.

[21]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.